UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NORTON J. DOUGLAS,

                                Plaintiff,

                                                              DECISION AND ORDER
                    v.                                        07-CV-609A

NIAGARA COUNTY BOARD OF ELECTIONS,
SCOTT P. KIEDROWSKI,
NANCY SMITH.
*Individually and in their official capacity as*
*Commissioners of the Niagara County Board of Elections*
 MICHAEL W. RIMMEN ,

                                Defendants.

_____


## INTRODUCTION

          Plaintiff Norton J. Douglas filed a Democratic designation petition to be

placed on the primary ballot for the office of Mayor of the City of Niagara Falls, New

York.  On August 16, 2007, the Niagara County Board of Elections ("BOE") invalidated

his petition upon finding an insufficient number of valid signatures.  Plaintiff commenced

a special proceeding in New York State Supreme Court which was later dismissed on

procedural grounds. Plaintiff then commenced this proceeding in federal court against

the BOE, Commissioners Scott P. Kiedrowski and Nancy Smith, and Michael W.

Rimmen, Chair of the Niagara County Democratic Party, alleging that his due process

rights were violated when the BOE failed to provide him with notice and an opportunity

to be heard before ruling his petition invalid.  Along with the complaint, plaintiff filed a

1

motion for a preliminary injunction seeking either a re-run of the Democratic primary election or placement on the general ballot on November 6, 2007.

The defendants filed a motion to dismiss the complaint.  On October 5 and 6, 2007, the Court held a hearing on the plaintiff's motion for injunctive relief.  Upon hearing testimony and upon review of the pleadings and briefs in this case, the Court denies the plaintiff's motion for injunctive relief and grants the motion to dismiss.  The Court finds that the plaintiff lacks a property or liberty interest in his candidacy for Mayor of Niagara Falls.  Further, even if a property or liberty interest existed, the availability of an expedited special proceeding in New York State Court to challenge the BOE's determination provided the plaintiff with sufficient opportunity to be heard before he was denied the opportunity to be placed on the primary ballot on September 18, 2007.

## FINDINGS OF FACTS

The following constitutes the Court's findings of fact based upon the testimony at the hearing.  Plaintiff sought to obtain the Democratic Party nomination for Mayor of the City of Niagara Falls, New York.  Plaintiff filed a designation petition seeking to be placed on the September 18, 2007 Democratic primary ballot.  The petition was received by the BOE on July 23, 2007.  Under New York State Election Law, any voter registered to vote for the office sought has three days from the day the petition is filed to make objections.  See NYS Elec. Law § 6-154(2).  On July 25, 2007, defendant Michael Rimmen, a registered voter and Chair of the Niagara County Democratic Party, filed timely objections to the plaintiff's petition.  Under that same

statute, Rimmen then had six days to file "specifications" to those objections (i.e., identify the specific reasons for each objection).  Id.  Rimmen timely filed his specifications on July 31, 2007.

On August 2, 2007, plaintiff received notice from the BOE that objections had been filed to his petition.  The notice did not include the specifications or identify the name of the objecting party.  The notice did not state when the objections would be considered or provide the plaintiff with any information as to how he could respond to the objections.

On August 16, 2007, the BOE held a hearing on the objections to determine their validity.  Defendant Rimman, the objector, attended the hearing but the plaintiff did not.  Rimman testified that he had learned of the hearing date by contacting the BOE in advance.  Plaintiff made no effort to contact the BOE before August 16, 2007 and therefore was unaware of the hearing date.  At the hearing, the BOE determined that 294 of the challenged signatures were invalid, leaving plaintiff eight signatures short of the number required to be placed on the ballot.

Plaintiff received notice of the BOE's determination on Friday, August 17, 2007.  He contacted the BOE that day at approximately 4:30 p.m. to obtain a copy of the objections and specifications.  Plaintiff spoke with BOE employee Lori Allen and requested a copy, but when it was determined that the plaintiff could not get to the BOE office before closing at 5:00 p.m., Allen advised plaintiff that a copy would be available for him to pick up first thing Monday morning.  Plaintiff arrived at the BOE office on Monday, August 20th and received a copy of the objections and specifications.

On August 21, 2001, plaintiff sought to "cure" the problems with his petition by providing the BOE with eight additional signatures.  That same day, plaintiff, acting *pro se*, commenced a proceeding in New York State Supreme Court pursuant to NYS Elec. Law § 6-102(2).  The following day, August 22, 2007, the plaintiff provided the BOE with four more signatures in a further effort to "cure" his petition.  Plaintiff served notice of the special proceeding on the BOE on August 23, 2007.

The BOE moved to dismiss the special proceeding on the ground that the proceeding was not properly commenced and because plaintiff had failed to name a necessary party (Rimmen – the objector).  On September 4, 2007, a hearing was held in New York State Supreme Court.  Plaintiff was represented by counsel at the hearing. New York State Supreme Court Justice Frank Caruso ruled that the special proceeding was defective for failure to name objector Rimmen as a necessary party and issued an order of dismissal following the hearing.  Plaintiff was served with that order before leaving the courtroom.

Plaintiff did not appeal from the dismissal of his special proceeding. Instead, plaintiff waited approximately two weeks before commencing this action on September 17, 2007.  The next day, September 18th (and the date of the primary election), plaintiff moved for injunctive relief seeking to have his name placed on the September 18th ballot.  Recognizing that such relief was impracticable due to the timing of his request, plaintiff alternatively sought an order from this Court either mandating a re-run of the primary election, or placing his name on the ballot for the general election on November 6, 2007.

An expedited hearing was held on October 4 and 5, 2007.  Upon the

Court's request, supplemental briefing was filed on October 9, 2007.  The Court heard

argument from counsel on October 11, 2007, and deemed the matter submitted on that

date.


## DISCUSSION

### A.   Preliminary Injunctive Standard

A plaintiff is entitled to a preliminary injunction only if it establishes that:

(A) the injunction is necessary to prevent irreparable harm; and (b) either that (I) it is

likely to succeed on the merits of the underlying claim or (ii) there are sufficiently

serious questions going to the merits of the claim to make it a fair ground for litigation

and that the balance of hardships tips decidedly in movant's favor.  Polymer

Technology Corp. v. Mimran, 37 F.3d. 74, 77-78 (2d Cir. 1994); Jackson Dairy, Inc. v.

H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam).   The award of a

preliminary injunction is an extraordinary and drastic remedy and will not be granted

absent a clear showing that the plaintiff has met its burden of proof.  Beech-Nut, Inc. v.

Warner-Lambert Co., 480 F.2d 801, 803 (2d Cir. 1983).  Furthermore, where the

preliminary injunction sought would:  (1) alter rather than maintain the status quo; or (2)

provide the movant with substantially all the relief sought and that relief cannot be

undone even if the defendant prevails on trial on the merits, a heightened standard of

proof is required.  Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27,

33-34 (2d Cir. 1995).  In such a case, the movant must show "a substantial likelihood of

success on the merits, i.e., that [his] cause is considerably more likely to succeed than fail." <u>Eng v. Smith</u>, 849 F.2d 80, 82 (2d Cir. 1988) (quoting <u>Abdul Wali v. Coughlin</u>, 754 F.2d 1015, 1026 (2d Cir. 1985)).

Plaintiff concedes that the higher standard for injunctive relief applies in this case as the relief requested would alter the status quo.  Therefore, to obtain injunctive relief, plaintiff must show a substantial likelihood of success on the merits of his due process claim.


**B.      Due Process**

Plaintiff alleges that his constitutional right to due process was violated when the BOE ruled his petition invalid without giving him notice and an opportunity to be heard.  The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deprive a person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  The threshold inquiry in any due process claim is whether the plaintiff possessed a liberty or property interest in the subject matter at issue.  <u>See</u> <u>White Plains Towing Corp. v. Patterson</u>, 991 F.2d 1049, 1061-62 (2d Cir.) <u>cert. denied</u>, 510 U.S. 865 (1993)  ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest.") (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976)).  Therefore, this Court must first address whether the plaintiff had a property or liberty interest in his candidacy for Mayor of Niagara Falls.

Property rights are not created by the Constitution.  Rather, they are "'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  See Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005) (quoting Bd. Of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  A property interest in a particular position arises only when the state law at issue confers a legitimate claim to entitlement to that position.  Id. at 85.

Many years ago, the Supreme Court made clear that there is no property or liberty interest in an elected office.  See Taylor v. Beckham, 178 U.S. 548 (1900). The Court reaffirmed that holding in Snowden v. Hughes, 321 U.S. 1 (1944), when it reiterated that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause."  Id. at 7. Lower courts have likewise concluded that a candidate for political office holds no property or liberty interest in an elected position.  See Velez, 401 F.3d at 86-87 (concluding that "Velez lacks a constitutionally cognizable property interest in her employment as an elected official."); Emanuele v. Town of Greenville, 143 F.Supp.2d 325, 333 (S.D.N.Y. 2001) (holding that a candidate has no property or liberty interest in being elected); Cornett v. Sheldon, 894 F.Supp. 715, 725 (S.D.N.Y. 1995) (holding that candidate for federal office possessed neither property or liberty interest in being placed on the ballot); see also Guzman-Florez v. College of Optometrists, 106 F.Supp.2d 212 (D.P.R. 2000) (holding that candidate for elected office holds no property or liberty interest in an elected position).  This is true regardless of whether the candidate is seeking an elected office, as in Snowden, Emanuele and Cornett, or whether the

7

candidate already holds an elected office and is seeking to challenge her unlawful removal, as in Velez.

Plaintiff cites Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458 (2d Cir. 2006), in support of his contention that he has a property interest in his state political candidacy.  However, in Rivera-Powell, the Court focused on whether the candidate for elected office in that case had received adequate *procedural* due process. The Court did not address the threshold issue of whether a property interest existed in the first place.  Because the Second Circuit did not expressly address that issue, Rivera-Powell does not support the proposition that plaintiff had a property interest in his Mayoral candidacy.  Further, in light of Taylor, Snowden and Velez, the Court is compelled to conclude that the plaintiff lacked a protected property or liberty interest in his candidacy for Mayor of Niagara Falls.  Absent a constitutionally protected right, his due process claim must fail.[1]

Moreover, even if the Court were to hold that the plaintiff had a property interest in his candidacy for Mayor, the Court finds that the plaintiff was afforded sufficient notice and an opportunity to be heard so as to satisfy the requirements of procedural due process.

---

[1]     Although the plaintiff now attempts to characterize his claim as a "ballot access" case, his complaint clearly articulates only a due process claim, not a claim that certain state restrictions unfairly burden a particular class of candidates.  See Anderson v. Celebrezze, 460 U.S. 780, 793 (1983) (explaining that "ballot access cases . . . focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process."  (quotation omitted).  Because plaintiff's complaint makes no such allegation, the ballot access cases cited by him are inapplicable to the analysis.

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" Rivera-Powell, 470 F.3d at 464-65 (quoting Parratt v. Taylor, 451 U.S. 527, 537 (1981)).  "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126 (1990)

The gravamen of plaintiff's claim is that the BOE's failure to provide him with notice and an opportunity to be heard before ruling on Rimmen's objections denied him procedural due process.  The BOE counters that plaintiff could have availed himself of the opportunity to attend the BOE hearing, but chose not to do so.  According to the BOE, it was plaintiff's responsibility to contact the BOE to inquire into when the hearing would occur and to plan to attend.  The BOE argues that it bears no responsibility for the plaintiff's lack of due diligence.

While the plaintiff might bear some responsibility, the BOE is clearly the party intimately more familiar with the election process and easily could have provided the plaintiff with advance notice of its hearing.  At a minimum, the notice of objections sent to the plaintiff on August 2nd could have advised him to call the BOE if he was interested in attending the hearing.

Nevertheless, the BOE's failure to take these simple steps does not amount to a constitutional violation because the plaintiff had an adequate opportunity to be heard in the form of a special proceeding brought in New York State Supreme Court. Under NYS Elec. Law § 16-102, a special proceeding must be commenced within three

9

days after the petition is deemed invalid by the BOE, and must be ruled upon by a

judicial officer the day after the special proceeding is heard.  In plaintiff's case, the BOE

ruled his petition invalid on August 17, 2007.  Plaintiff commenced his special

proceeding in New York State Supreme Court on August 21st and the hearing on that

special proceeding was held on September 4th.  Justice Caruso issued his ruling that

same day, two weeks before the primary election.  The availability of that expedited

judicial proceeding to review the BOE's determination provided the plaintiff with an

adequate opportunity to challenge the BOE's decision before he was ultimately denied

the opportunity to be placed on the September 18th primary ballot.  In the Court's view,

the special proceeding constitutes an adequate "pre-deprivation" procedure.  Thus,

even if the Court were to hold that the plaintiff had a property interest in his candidacy,

the availability of an expedited special proceeding under NYS Elec. Law § 16-102 to

address the merits of his petition satisfies the requirements of procedural due process.

See Murawski v. Pataki, ___ F.Supp. ___, 2007 WL 2781054, at n.5  (S.D.N.Y. Sept.

26, 2007) (stating that "[e]ven in the absence of an opportunity to be heard prior to a

BOE decision . . . the statutory provision for an expedited review of that determination

by the New York Supreme Court provides adequate pre-deprivation review and satisfies

due process requirements."); Cornett v. Sheldon, 894, F.Supp. 715, 727 (S.D.N.Y.

1995) (NYS Elec. Law § 16-102 affords due process); see also Rivera-Powell, 470 F.3d

at 468, n.10 (discussing but not deciding issue of whether NYS Elec. Law § 16-102

should properly be considered "pre-deprivation" review).  The fact that the special

proceeding was improperly commenced does not affect the Court's analysis.  See

Rivera-Powell, 470 F.3d 458, 468, n.9 ( "The fact that [plaintiff] failed properly to pursue

10

the state court action, and that it is now too late to do so, does not affect [the] due

process analysis"); see also Murawski v. Pataki, ___ F.Supp. ___, 2007 WL 2781054

(S.D.N.Y. Sept. 26, 2007) ("The fact that plaintiff did not avail himself of the opportunity

to challenge the State BOE's determination does not create a procedural due process

violation.").


## CONCLUSION

For the reasons stated above, the Court finds that the plaintiff has failed to

establish a substantial likelihood of success on the merits of his due process claim

because: (1) he did not have a protected property or liberty interest in his candidacy for

Mayor of Niagara Falls; and (2) even if he did have a protected interest, the availability

of an expedited judicial procedure to review the BOE's determination afforded him with

an adequate pre-deprivation opportunity to be heard.  Accordingly, plaintiff's motion for

a preliminary injunction is denied and the defendants' motion to dismiss the complaint is

granted.


SO ORDERED.

s/ *Richard J. Arcar*a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT


DATED:  October 16, 2007